F I L E D
Clerk
District Court

APR 3 0 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES of AMERICA, | Case No.: No. 07-00004 |
| Plaintiff, | **DETENTION ORDER** |
| v. | Hearing Date: April 26, 2007 |
| | Hearing Time: 9:00 a.m. |
| | Judge: Hon. Alex R. Munson |
| SHENG, Lin | |
| Defendant. | |

On April 26, 2007, this Court held a hearing pursuant to 18 U.S.C. § 3142(f) on the government's motion to detain the defendant pending trial.

The charges in this case involve an offense for which the maximum term of imprisonment is ten (10) years or more as prescribed in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* 18 U.S.C. § 3142(f)(1)(C). Specifically, the defendant is charged by Complaint with distribution of methamphetamine, in the form commonly known as "ice," involving a sale of approximately 3 grams of the Schedule II controlled substance. This case also involves a serious risk that the defendant will flee the jurisdiction and not appear for further proceedings. 18 U.S.C. § 3142(f)(2)(A).

Having considered the evidence presented by the government, including the testimony of Detective Elias Q. Saralu, as well as the representations of counsel, the Court hereby makes the following findings of fact and states the reason for detaining the defendant:

1

## **FINDINGS OF FACT**

1. Detective Saralu is currently employed as a Police Detective for the Commonwealth of the Northern Mariana Islands (CNMI) Department of Public Safety (DPS). He is currently assigned to the DPS, Criminal Investigation Section-Special Investigation Section (SIS) to investigate any and all criminal violations with special attention to illegal narcotics incidents.

2. On April 13, 2007, Detective Saralu participated in an investigation based on information that a DPS Cooperating Source ("CS") could make a purchase of ice from the defendant. Also participating in the investigation were other CNMI and federal law enforcement officers, including a Special Agent from the Drug Enforcement Administration ("DEA"), in various support roles. The investigation involved going to the Price Costco in San Jose where a proposed transaction with the defendant was going to be arranged.

3. A surveillance team and the CS went to the parking lot of Price Costco, where the CS placed a call to a telephone number (234-1577) at a tire shop which the defendant operated. The CS spoke to the defendant about buying five (5) grams of methamphetamine ice. The conversation was recorded.

4. The defendant told the CS to give him, the defendant, fifteen minutes and then the CS should call back. About fifteen minutes later, the CS again called the tire shop. The defendant told the CS that he, the defendant, had only three (3) grams of methamphetamine ice. The CS asked the defendant to meet at the Price Costco and the defendant agreed.

5. Law enforcement officers then searched the CS for drugs or large amounts of money and found none. One of the officers handed the CS one thousand one hundred dollars

($1,100.00) in marked DPS currency for the purchase of the methamphetamine ice. The CS was then released to wait for the defendant at the parking lot of Price Costco.

6  The surveillance team observed the CS waiting for the defendant who arrived driving a beige sedan and who parked in one of the empty parking spaces in the lot. There was a young child in the rear seat of the vehicle. The young child was later identified as the defendant's son.

7.  After the defendant parked the car, the CS walked towards the it and entered the vehicle on the passenger side. There was then an exchange of the DPS currency for a zip lock bag containing a napkin which, in turn, contained three (3) smaller zip lock bags with a crystalline substance inside. A few minutes later, after receiving a signal that the sale had been completed, the arrest team moved in. The CS, who was still on the passenger side of the vehicle, handed to Detective Saralu a clear zip lock bag containing the napkin and the other zip-lock bags. Detective Saralu later conducted a field test on the crystalline substance and it was positive for methamphetamine. The net weight is estimated to be three (3) grams. The officers searched the defendant incident to his arrest and, in his left front pants pocket, they found the one thousand and one hundred dollars ($1,100.00) of marked DPS currency used to buy the drugs.

8.  The defendant was taken into custody. The young child, who had also been taken for safety, was later released back to his mother.

9.  According to the financial affidavit provided to pre-trial services by the defendant, he has approximately fourteen thousand dollars ($ 14,000.00) in an account to which he has access. Although he has a wife and child here in Saipan, he is a Taiwanese National with a valid Taiwanese passport. In addition, although he works at a tire shop with an income of

3

approximately eight hundred dollars ($ 800.00) per month, he does not own the shop and has no property or other holdings tying him to the community. He has family in Taiwan.

10. Pursuant to 18 U.S.C. § 3142(e), the Court also finds under these circumstances that no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person or the community.

## REASONS FOR DETENTION

In making its determination to detain the defendant pending trial, the Court has taken into account available information concerning and has considered the several factors enumerated in 18 U.S.C. § 3142(g). Having done so, the Court finds that:

(1) The nature and circumstances of the offense charged in this case are very serious. The offense is one for which the maximum prescribed penalty is more than ten (10) years. The amount of the drug is larger than in many of the cases to come before this Court. It appears that the defendant may be a supplier of drugs to other dealers in the CNMI. And the defendant is facing a substantial penalty in the event he is convicted.

(2) The weight of the evidence is substantial. The entire transaction took place under the surveillance of law enforcement agents who overheard what happened as it happened. The agents made an audio recording of the phone calls to the defendant to arrange a meeting with the government's cooperating source and they recorded the meeting itself. The defendant was arrested on the scene while still in the car. The drugs were immediately handed to law enforcement officers and those officers immediately recovered the DPS funds used to make the drug purchase.

(3)     The Court recognizes that the defendant is employed and has a family here. By the same token, he is a foreign national who also has family back in China. He also has the means by which to flee by returning to China if he were released.

(4)     Defendant's activity involved the distribution of an extraordinarily dangerous and highly addictive controlled substance that has had a devastating effect on the CNMI community. It continues to pose a significant risk to the community as a whole and his release would only heighten that risk. The Court notes that, in this particular case, the defendant displayed a disregard for the safety of his own child by conducting a drug transaction in a car while his child was in the rear seat of that car.

For all of these reasons, the Court finds that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. Accordingly, it should be and hereby is:

**ORDERED** that the defendant be detained pending further proceedings in this matter; and it is further

**ORDERED** that the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and it is further

**ORDERED** that the defendant be afforded reasonable opportunity for private consultation with counsel; and it is further

**ORDERED** that, on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is

confined to deliver the defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED

_4-30-07_
Date

_Alex R. Munson_
ALEX R. MUNSON
United States District Court Judge